at this point. So I have, is Mary Christine Sugaila the supervisor present, observing? Yes, she is present. Okay, I'm going to take your word for that. You're an officer in the court, as I can see her. And what I've been advised is that each side has a total of ten minutes, which is not very much time. But that Sidney Wong is going to take five minutes and leaving two minutes for rebuttal, is that correct? Yes, I will be speaking for five minutes. My co-counsel, Mr. Johnson, will be speaking for three minutes and then reserving two minutes for rebuttal. Okay, so you're going to speak five minutes right now and then you'll have two minutes for rebuttal, is that correct? That's correct. All right, then thank you for appearing and we're ready to go. Say your name and your appearance and the questions and fun will begin. Good morning, Your Honors, and may it please the court. Sidney Wong, certified law student at Alameda Loyola Law School, supervised by Merrick Christine Sugaila and Paula Mitchell for petitioners and their children. I will be addressing the due process issue this morning and my co-counsel, Mr. Johnson, will be addressing the adverse credibility determinations issue. In a full and fair hearing, a petitioner is given a reasonable opportunity to present testimony and evidence in support of their application. The petitioner provides merited testimony about their claims and is examined about the contents of their application. In violation of this process, Guadalupe was not afforded a full and fair hearing on her independent claims, which were denied before she had the chance to present them. At the beginning of the hearing, the IG said that they would only be going forward on Pedro's application that day. And consistent with her role as a witness, Guadalupe was excluded from the courtroom during Pedro's direct testimony. When she was allowed to testify, she only testified about the incident that took place at the home to corroborate Pedro's claims. Let me ask you a question since we don't have a lot of time. So let's just say hypothetically, I'm not saying we have reached this decision because we don't consult until after you argue and have a conference. If we agree that the BIA erred by not providing Rodriguez-Palacios a separate hearing in her application, what evidence would she offer to prove her claims if given the opportunity to do so? Guadalupe's application contained unique facts, such as that she is known as the wife of Pedro and mother of his children, she's a member of the Catholic Church, she is also a member of her favorite political party, and her maternal grandparents were also members. And in this case, Guadalupe is not required to provide evidence or exactly what she would have presented if the IG had not violated her due process. Let's say you get a separate hearing. In this hearing, she was found not to be credible, correct? That's correct. All right. So if she gets another hearing, can the immigration judge consider the testimony she gave in her husband's hearing? No, Your Honor. For reasons that my co-counsel will discuss regarding the adverse credibility determination, we argue that it is not supported by substantial evidence. However, if this court does revamp for a brand-new hearing, she should still not be precluded from presenting her claims in a future hearing. That's not exactly what I'm asking, though. Maybe what you're saying is she doesn't get the Scarlet A stamped on her, that she was adversely credible. But she still can't distance herself. She testified under oath. So the next IG should be able to look at everything she did, correct? Yes, Your Honor. They still should be able to look at the claims, however. No, I'm talking about her testimony. She gets a new hearing. She doesn't get to start fresh in the sense she's already testified. So that testimony can be compared with whatever she puts on there. Is that correct? Yes, Your Honor. That's correct. Okay. Go ahead. I'm sorry. No, no worries. And additionally, quite a little bit of bias. Can I ask kind of a similar question to what Judge Kellner was asking? On one hand, I think you have a pretty good argument that she just didn't get to have a normal hearing. On the other hand, normally for a due process claim, you kind of have to make a prima facie case in order to show that you were injured, that your process rights were being violated, prejudiced your client. And here, you just mentioned that I think all those things were mentioned in your brief, you know, that she's Catholic and that she's a family member and all that stuff. But none of those things, all those are just kind of like we're going to make arguments about these things. They don't actually say, I didn't see anywhere where you said what your argument would be. Like saying somebody's Catholic versus saying why being a Catholic is actually going to result in them being at a higher risk of persecution or injury or something. I didn't see that. And so I think I would be inclined to say you didn't actually show prejudice on a normal record. The only challenge here is that you, you know, it's not clear, do you need to show prejudice? What I'm struggling with is do you actually need to show prejudice if you just didn't get a hearing at all? If your client had not gotten any hearing in the IJ just because of some mistake, didn't give her a hearing. Would she still need to show, like make that prima facie case, do you think? Or are there some due process violations that I guess she doesn't even need to make a prima facie case for? Your Honor, there are some due process violations where you do not need to make a prima facie case. And the standard of review here is whether the outcome of the proceedings may have changed, not whether she has shown that she has grounds for relief. I know, but in doing that you normally have to like give us the evidence that you think would, I understand what the standard is, but you still have to show something. You can't just say, well, we're going to talk about X. You have to say what you think it would make. So I'm familiar with what the standard is, but it's not enough usually just to say we're going to talk about some subject. You need to actually say what you're going to say about that subject. I'm not sure you did that here. So that's the difficulty for you, I think, is I'm not sure. If I'm not convinced that you actually have shown prejudice, could you win because this is just such a bad due process violation that you don't actually need to show prejudice? Yes, Your Honor. This court may infer prejudice when significant oral testimony is prevented. This was the case in Kona, RV, INS, which was heard under this circuit, where the petitioner was not able to present their written claims based on their written application because the IJ prevented it. And this court inferred prejudice because oral testimony is so significant in immigration, particularly asylum. I guess I'm kind of asking a slightly different question. I don't want to take you too long, but, like, what if I don't actually think that your client can – what do I think your client's going to lose? Because, you know, I think your client may get hit with an adverse credibility determination if they were to send this back, which would knock out all of her testimony, for the reasons I think Judge Callahan was asking about earlier. And so your client was going to lose. Does she still have the right to her day in court, so to speak? That's kind of what I'm asking. Even if I think your client's going to lose, does she still have the right to her day in court? Yes, Your Honor, she does, because an IJ may not prejudge claims before they have heard due process. It gives her the right to present her claims regardless of whether beforehand the IJ does not think that she will get relief. And, Your Honor, over time, I suggest that when you come back, you know, you can always, when you come back on rebuttal, if there's something else that you think about, when you're not under the hot light there, you can mention that in your rebuttal, Judge. We'll wait for her rebuttal. Okay. All right. Thank you. Thank you. Good morning. Good morning, Your Honors. My name is Zachary Johnson for the petitioners, and I'll be addressing the adverse credibility determinations. Those determinations should be reversed both as to Pedro and as to Guadalupe. The IJ gave both improper and inadequate reasons to justify the adverse credibility determinations. And under the Ninth Circuit case decided by this court, Carvey-Ashcroft, this court should remand so that the IJ has the opportunity to lay out both proper and adequate reasons for that determination, or for those determinations, rather. So how do you address the cases of Hamad versus Holder and Kendi-Holder, both of which held that inconsistencies between the testimony of a husband and wife could support adverse credibility determinations? Yes, Judge Gallaghan, that's true. I mean, like husband and wife should be able to get their story straight, right? That's basically you have a chance to talk to each other, so why can't you get your story straight? Well, Judge Gallaghan, it is true. Both of those cases do say that inconsistencies are valid reasons for adverse credibility determination. However, the record does compel reversal if the IJ does not give specific and cogent reasons for the adverse credibility determinations. So, in other words, irrespective of what exactly the inconsistencies are, if the IJ's opinion doesn't have clear reasons for how he or she came to that determination, this Court should still reverse and remand under Harvey Ashcroft so that the IJ has a chance to elaborate and make it more clear why exactly he made that determination. Your Honor, I'd like to perhaps ask him how. Can I ask a related question? Absolutely. It seems to me like, do I recall correctly, that one of your arguments was, well, I know you want to get rid of both adverse credibility determinations, but you're like, well, at a minimum, you should only have an adverse credibility determination for one or the other because the fact that there might have been an inconsistency between the two would maybe demonstrate that one of them was lying, but not for both. It's all mutually explicit. I think you made that argument. The difficulty with that is, isn't it true that, like, you know, if you have two people that you think are co-conspirators in a criminal, you take one into a room, and you grill them, and they, you know, they tell you one story, and then you have to take another in a room and tell you a totally different story. Wouldn't most people think that that inconsistency reflects badly on both of their credibility? I mean, the whole point is that if they can't get their story straight, maybe they're both lying. Judgment, on a general level, I agree with that kind of reasoning. However, under this court's previous precedent, so specifically in the appendix case of B.C. and B. Gonzalez, it's persuasive precedent that the I.J. can't kind of lump two individuals' credibility together. So at a bare minimum, the I.J. still needs to give several reasons for each individual's credibility. So to take your example more concretely, if there were kind of, you know, two co-conspirators, an I.J. would need to say independently what each co-conspirator was kind of liable, guilty, or inconsistent. But if we can look at it and see inconsistencies, then why would this compel a different result? Judge Gallagher, this compels a different result for the specific reason that the I.J. in this case did not give full and kind of coherent reasons for justifying the adverse credibility determination. So to kind of get more concrete with respect to Guadalupe's credibility, and that's discussed. I'm going to ask if Judge Arberton wants to ask you questions. I just wanted to get you to address the issue of the son, Anderson, and whether or not you had raised that argument before the BIA that he was not permitted to testify. Well, we did, in fact, reach back to Judge Arberton. So in the brief to the BIA, we did say that the I.J. in fact ignored corroborating evidence and in fact- Are you saying that the I.J. discouraged Alvaro Campos' son from testifying? But as I recall the record, counsel never tried to call the son. How does that work? Yes, Your Honor. So at the trial levels during the immigration proceeding, the I.J. said that he would prefer that the son not testify, and then at the end of the hearing, pages of the record 170 of 180, the I.J. said, we have more testimony, but I want counsel ready for closings. So in effect, Your Honor, the I.J. precluded any chance for further witnesses to give testimony. Okay, thank you. You're over time. We appreciate your comments. All right, we'll hear from the respondent. Good morning, Your Honors. Let's wait. I want to make sure. Can petitioners see respondent? Okay. Okay. They say they can see you, so go ahead. State your name for an appearance. Good morning, Your Honors. Jeffrey Hartman appearing on behalf of the Attorney General as the respondent. Your Honors, in this case, the court should deny the position for review because no evidence compels reversal of the agency's adverse credibility determination. And Pedro has an established prejudice, and I'd like to jump to the due process. But what about that when you keep someone out of the courtroom and it's their own hearing? Sure. That would never fly in a criminal case, okay? And so if it really was her hearing, she would be entitled to hear what her husband said before she had to testify, right? Sure. And the immigration judge at the outset of the hearing said you have every right to be here, recognizing that it was her case also, but explaining that they had to be excluded. Well, how did she get out in the hallway? Well, I think her attorney agreed that she should be excluded to increase the evidentiary weight of her testimony. Okay. That's not quite right. I don't think any say something like, I'm going to get the words wrong with someone, you know, and I'm going to decide the husband's case, and then we'll decide whether or not we need to decide. That's true. There was some kind of off-the-record conversation where I think the parties. And so you take that and you combine that with the fact that she did not get to testify as to everything. She just got that she was being brought in to, as a witness, sort of the credibility of her husband, and I recognize that might reflect, conversely, on her credibility too. The question I've got is normally you have to show prejudice of some sort, right? And I think that would be your strongest argument, because as I see her briefing, she says these things she would talk about, but she doesn't explain why those things actually, she would have an argument. And I think you have to do that normally. But what I'm struggling with is if you didn't get somebody hearing at all. Let's say you just had an immigration judge. They're really busy. They just want to, like, get their. So they just start denying people's claim. And then they come before us. And then I think under the argument you're making, they would have to say, well, here's what I would have said, and here's why I would have been prejudiced. They basically have to make their case in the first instance to us, right? So why don't they, does she have to show prejudice if she just didn't get her day in court? It's hard for me to see why she has to show prejudice. There's some due process violations that are just, what do you call it, just so blatant you don't have to show prejudice. And I think so on this wrong side, it's a culminar, and I think that's a good example. So I think this court's due process case is where it implies prejudice fall into a bias camp or a lack of direction by the I.J. in a prosaic case. So culminar was a case in which the I.J. prejudged the case. It involved a Philippine military dentist. And a child he treated died, and he suffered persecution. And at the beginning of the hearing, the I.J. said, this is nothing more than a medical malpractice suit. And he consequently didn't permit the petitioner of that case, culminar, to testify upon this claim. Let's just hypothetically, let's say if I go to court and it's not my day for a hearing, but I'm there as a witness, okay, and I testify as a witness, and if after that the judge says, boy, you two are liars, so we don't even need to have your hearing in the future, would that, would you say, would she have been denied due process then? I mean, I guess we would respectfully push back against the notion that she didn't have her hearing, her hearing was satisfied. But that's not my hypothetical. If I came, it wasn't my hearing date, and I testified as a witness, but it was clear that I was a liar and I was never going to win, could the judge cancel my future hearing? I think it depends on whether it's a consolidated case like this. Well, if you have your own case, I think that the IG couldn't deny it. That's important, because I have to look at it, because this is a, she's a derivative, what do they call it, derivative, but she also has her own. So I thought, well, maybe you have to pick one or the other, but what is your position? I think the deal is that you can be a derivative applicant, but you can also have your own application. Is that correct? You agree with that? Yeah. And that's true here. Okay, so she's being considered as a derivative and that's her husband's proceedings, but she didn't, let me just ask you, to Judge Callahan's question, if we conclude that she never got her own hearing, then you would agree that this should be remanded so she can have her own hearing? No, I think she still needs to list her own prejudice under this court's cases. Okay, but then back to my hypo, like, you know, so if an IJ just starts rejecting these because, you know, doesn't have time to hold hearings, you would say that, like, I mean, we don't want you to have to send these cases to her. Come not send the first instance. What? Sir, like, I never want to see you again. You're a liar, so I'm going to cancel any future hearings. I think this would be a more difficult case for us if the IJ didn't commit to testify about this incident with Maura 18 that led to Danforth's credibility determination and that if her application included other claims that were material. Judgment, like, because you were noting she found claims that she might have a religion claim, but when you look at her witness list, they are 392. Before they tried to sever their cases at the last minute, it says she's got testified for 20 minutes about her political affiliation. I'm with you. I'm with you that if I had to guess, she probably loses on remand, but the question for me is just does she get her day in court, right? And I think I just asked you if we conclude she hasn't yet had her day in court, does she get one? And you said, well, she still has to show prejudice, but that's cool. Do we have any cases that say that? I mean, you're talking about, you're saying, well, in these biased cases and stuff, we don't have to show prejudice, but this is even worse, right? This is like not getting your day in court. This is fundamental. I respectfully disagree with that. You think that she got to testify about the court. Okay, I'm not talking about, just be clear, I'm not saying that. I'm not asking you to concede that she didn't get her day in court, but if we conclude she didn't get her day in court, then you're saying, well, she still has to show prejudice. That's quite a rule. That's basically saying that most of these folks lose ultimately. Why wouldn't NIJ then just start doing away with hearings and letting them come to us first? And then only if we found prejudice with NIJ actually have to hear hearing on those subsets of cases. I think those are the cases like Zoltolcain and Oshadi and Colmenar, where this court implies prejudice, where the immigration judge is either biased and so shapes the form of the testimony or doesn't explain hearing procedures to a pro se respondent, precluding them from either providing a declaration or providing any testimony at all about the essential bona fides of their application here. I think we understand your argument. It's just a question of we'll have to decide whether we agree with it. But let's just assume hypothetically that we remand for a separate hearing on her application. What impact, if any, should the IJ's original credibility determination have on that proceeding? I think the immigration judge can consider her prior inconsistent testimony about the corporate claim. But is she branded with the A, the hestoprene A of adverse credibility in going into the next? Or does she have to earn it in that hearing, based on all the testimony? I think under Maimdai, the immigration court has to consider the totality of the circumstances. So if needed, a testimony of evidence was adduced on remand. The immigration judge, of course, would have to weigh that testimony in evidence and re-evaluate her credibility. But does the previously declared not credible testimony come in substantively? Or is it, as it would be in a regular civil proceeding, a source of impeachment? I think in this context it would come in as a primary source of information because this was her immigration case. Well, but okay, it could come in, right? I'm with you on that. But it's sort of like if someone's convicted of a felony and they've previously been convicted, that doesn't ever go away. It can just be the conviction is there. But an adverse credibility finding, are you saying that that adverse credibility is imported into the new hearing without ever having the hearing again? Do you want to do this a third time? Well, I think the actual finding gets revisited. The IJ has to consider the totality of the circumstances. Mechanically, the immigration court keeps a recording of proceedings that will be, in this case, continuously remanded. Because it's an administrative proceeding. Correct. The record will continue. The record will be there. So let me see if I can summarize. So she was found adversely credible for purposes of her husband. Under our theory, she was found adversely credible for purposes of her husband, just like she wasn't married to him and she was some crime boss. Because you can find any witness, you can make an adverse credibility finding as to any witness. So I don't know that that adverse credibility finding, you're not saying that would carry over necessarily to her own immigration proceedings if she was sent back. But it would be a factor and something that could be considered in whether or not to make an adverse credibility finding for purposes of her own proceedings. Okay. That makes sense to me. All right. Any additional questions? You have 30 seconds. Thank you, Your Honor. Our position is that under being died, the petitioner has not met their burden to identify compelling evidence that compels reversal of the agency's adverse credibility determination. In this case, Guadalupe was given an opportunity to present her case. She had six months to submit evidence. She was given a chance to testify about the primary instance in her application, but she can't establish prejudice. The religion box on her application, AR-3, is needed to check. Thank you, Your Honor. Thank you. Thank you. All right. I guess, Ms. Wong, I believe you reserved two minutes for rebuttal. We're ready. Yes. Thank you, Your Honor. So first of all, Ms. Wong, can I ask you, can we ask you the question that we were all kind of going with the government's attorney there at the end, which is do you agree that if she was to go back and have her own hearing, that her testimony in this case would be, could be considered in determining whether to make an adverse credibility finding. But the adverse credibility finding just would not be carried over, sort of wholesale, and automatically she would be deemed to be adversely credible, non-credible. Yes. Yes, Your Honor. I agree that the testimony can come in, that the immigration judge should reevaluate the credibility. Furthermore, the IG cannot make an adverse credibility determination if the court has never heard her separate claims in the first place and if she has not been given the opportunity to explain them. I would also like to address the government's contention regarding consolidation. Although the claims were consolidated, which allows for efficiency to hear overlapping claims, the IG still must come forward with due process, and the IG knew that she had separate claims. So regardless of the consolidation, he had a duty to hear them, and she had a right to present evidence, such as having her son present on them, such as being able to provide additional written documentary evidence. And there are times, and this is recognized in a matter of fee, which is a BIA case, that there are times where the written documents alone are not enough to support a finding of relief. However, oral testimony can bring the petitioner over that threshold. Therefore, she did not need to have met her burden for relief in those written documents. So the fact that this court cannot find those claims on their face is not an issue, especially because she did not have a chance to supplement or present due to the IG's own decision-making. I'd also like to point out that the court will not need to reach whether or not Guadalupe, an adverse credibility determination, was supported by substantial evidence if it agrees with the due process violation for Guadalupe. All right. Fifteen seconds to wrap up. I'm just giving you 15 seconds, so you don't have to take it. All right. Just wanted to say that the inability to show her claims was created by the due process violation itself and not because of any fault on behalf of her counsel. That is all. Thank you. All right. Thank you. This matter will stand submitted. Once again, we thank pro bono counsel, we thank government counsel, and everyone did an excellent job and will be helpful in this court resolving the issues. Thank you.
judges: CALLAHAN, VANDYKE, Arterton